# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| BINIAM ASGHEDOM, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **2:17-cv-8027-LSC** |
| | ) | **(2:12-cr-00501-LSC-TMP)** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OF OPINION

This Court has for consideration Petitioner Biniam Asghedom's ("Asghedom's") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The United States has responded in opposition to the motion. For the following reasons, the motion is due to be denied as without merit, and no evidentiary hearing is warranted.

## I.    Background

For some period of time prior to October 2010, Drug Enforcement Administration ("DEA") agents had been investigating the drug trafficking activities of individuals associated with a residence at 108 Page Avenue in Birmingham, Alabama. Part of the investigation had focused on Asghedom, from

whom agents had made two undercover purchases of cocaine. On each occasion on which undercover buys were made, Asghedom was driving a black GMC pickup truck registered to Sharia Harris. On other occasions when agents had him under surveillance, Asghedom was always driving the same truck. In late October or early November 2010, agents attached a self-contained, battery powered GPS tracking device to the undercarriage of the truck.

On December 1, 2010, DEA agents were conducting physical surveillance of Asghedom and located him in the area of 108 Page Avenue, driving the black GMC pickup truck. Later that evening, while continuing to conduct surveillance, a detective with the Birmingham Police Department saw Asghedom fail to signal a lane change. Accordingly, Asghedom was pulled over for the traffic violation. During the stop, Asghedom was asked for consent to search the vehicle, which he gave. Under the beverage holder in the center console of the vehicle, officers recovered a large clear plastic bag containing several smaller clear plastic bags each holding what was later determined through testing to be cocaine hydrochloride with a net weight of 495.9 grams. Underneath the plastic bags, officers also found an amount of cash totaling $14,650. Asghedom was arrested. Two fingerprints that matched Asghedom were later lifted from one of the plastic bags.

On November 27, 2012, Asghedom was charged in a one-count indictment with possession with the intent to distribute cocaine. Asghedom retained Rita Briles, and later Steven D. Eversole and Adam Bollaert of the Eversole Law Firm, as his counsel. Ms. Briles filed two motions to suppress evidence on Asghedom's behalf, which were each denied after evidentiary hearings were held. Trial commenced on March 3, 2014. The following day, the jury returned a verdict of guilty on the one-count indictment in which Asghedom was charged. After trial, Mr. Eversole and Mr. Bollaert each sought and were permitted to withdraw as counsel. This Court sentenced Asghedom to a term of imprisonment of 120 months. Judgment was entered on August 1, 2014. Ms. Briles then sought and was permitted to withdraw as counsel.

Through different retained counsel, Asghedom appealed his conviction and sentence. On March 29, 2016, the Eleventh Circuit decided Asghedom's appeal, affirming his conviction and sentence. The mandate was issued on April 27, 2016. On July 26, 2016, Asghedom filed a notice of writ of certiorari with the Supreme Court. On October 3, 2016, the Supreme Court denied Asghedom's writ of certiorari.

On June 13, 2017, Asghedom signed the present § 2255 motion, which was filed into the record on June 19, 2017. On October 17, 2017, the Court issued an

order to show cause to the United States. On October 20, 2017, the United States filed a motion for a more definite statement regarding Asghedom's § 2255 motion. The Court granted the United States's motion, directing Asghedom to provide a more definite statement of his claims for relief. Asghedom filed his supplement to his § 2255 motion on November 28, 2017. The United States then responded in opposition to the motion.

## II. Discussion

In litigation stemming from a § 2255 motion, "'[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the . . . [movant's] allegations are affirmatively contradicted by the record.'" *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520-21 (5th Cir. 1979)). However, it is appropriate for the Court to conduct an evidentiary hearing if, "'accept[ing] all of the . . . [movant's] alleged facts as true,'" the movant has "'allege[d] facts which, if proven, would entitle him to relief.'" *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (internal citations omitted).

Asghedom raises five claims, each alleging ineffective assistance of counsel by one of his trial attorneys, Ms. Briles: 1) she was ineffective for failing to call witnesses at trial and failing to hire a fingerprint expert; 2) she was ineffective for

failing to allow Asghedom to testify on his own behalf at trial; (3) she was ineffective for asking questions during cross-examination that opened the door to evidence of Asghedom's involvement in a larger criminal enterprise; (4) she was ineffective for failing to object to the Court's treatment of a juror question; and (5) she was ineffective for failing to examine material evidence prior to trial, namely the plastic bag containing the cocaine on which Asghedom's latent fingerprints were discovered. Asghedom is clear that his allegations of ineffective assistance of counsel are directed solely at Ms. Briles, and not at any of the other attorneys he hired.

Claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion and are therefore not subject to procedural bar. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). More specifically, the petitioner must show that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88.

In applying this framework, the Court should be "highly deferential" in evaluating counsel's performance and must bear in mind that "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged performance, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. The Court must also indulge a strong presumption that counsel's performance falls within the "wide range of reasonable professional assistance." *Id.*; *see Bell v. Cone*, 535 U.S. 685, 702 (2002) (holding that "tactical decisions about which competent lawyers might disagree" do not qualify as objectively unreasonable). A petitioner who seeks to overcome this presumption does not carry his burden by offering bare accusations and complaints, but rather "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Where a petitioner fails to show that his counsel's performance fell below an objective standard of reasonableness, the court need not address the issue of prejudice. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). Where the court does consider this prong, the petitioner must show that counsel's errors were prejudicial and deprived the defendant of a "fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This burden is met by establishing by a

reasonable probability that the outcome of the proceeding would have been different but for counsel's errors. *Williams v. Threatt*, 529 U.S. 362, 391-93 (2000); *Strickland*, 466 U.S. at 692.

### A. Alleged failure to call defense witnesses or hire a fingerprint expert

Asghedom's first claim, that his trial counsel was ineffective for failing to call any witnesses on his behalf or hire a fingerprint expert to refute the United States's fingerprint expert's testimony, fails for several reasons.

First, Asghedom has failed to identify with specificity any witnesses who should have been called but were not, aside from stating generally that family members and friends could have testified as to his good character and "legitimate activities." His mere allegation that his counsel should have called witnesses is insufficient to sustain his burden of demonstrating that his counsel was ineffective in a § 2255 proceeding. *See Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) (noting that petitioners bear the burden of proof under § 2255).

Second, to the extent that Ms. Briles, an experienced trial attorney, was involved in any decision regarding whether or not to call a witness,[1] her decisions in

---

[1] Ms. Briles explained in her sworn affidavit that the United States submitted in this proceeding that after Asghedom indicated that there was a witness to the traffic stop conducted on December 1, 2010, she travelled to the location several times on her own and several times with Asghedom's fiancée, that they both knocked on several doors asking residents in the area if

that regard will be given deference because the decision to call a witness, including an expert witness, is the "epitome of a strategic decision." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). Indeed, calling any witness on behalf of Asghedom would have opened that witness up to being cross-examined by the United States, which could have brought forth inculpatory evidence. The Supreme Court and the Eleventh Circuit have found that strategic choices made by counsel are "virtually unchallengeable." *Strickland*, 466 U.S. at 690; *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998).

These same principles are true with regard to the alleged failure to hire a fingerprint expert. Assuming Ms. Briles had some involvement in decisions concerning a fingerprint expert,[2] Asghedom has failed to establish what information such an expert would have uncovered and how he or she would have contradicted the testimony of the United States's fingerprint expert. Asghedom must ground his constitutional claims on facts and not pure speculation. *See Beeman*, 871 F.3d at 1222.

---

they had recalled the incident, but that they were unable to find any potential witnesses or obtain any discovery. (Doc. 8-1 at 2-3.)

[2]     Ms. Briles explained in her sworn affidavit that Asghedom's family had hired a latent fingerprint expert from Indiana, Robert J. Kerchusky, but that Asghedom's other counsel, Adam Bollaert of the Eversole Law Firm, handled all dealings with Kerchusky. (Doc. 8-1 at 3.) She explained that Mr. Bollaert "handled all testimony concerning fingerprint evidence as well as any decisions regarding whether Mr. Kerchusky would testify." *See id.* Indeed, as evidenced from the trial transcript, Mr. Bollaert handled all testimony concerning fingerprint evidence. As noted, Asghedom does not complain of Mr. Bollaert's representation of him.

In any event, a decision not to hire an expert is a strategic decision not generally subject to review in habeas proceedings. *See, e.g.*, *Lovett v. State of Fla.*, 627 F.2d 706, 709 (5th Cir. 1980). As explained by the Eleventh Circuit in a § 2255 proceeding where the petitioner challenged the scope of his attorneys' investigation and the reasonableness of their strategic choices:

> *Strickland* makes plain that a reviewing court's objective "is not to grade counsel's performance." 466 U.S. at 697, 104 S. Ct. at 2069. We do not measure counsel against what we imagine some hypothetical "best" lawyer would do, in part to avoid "the distorting effects of hindsight" and in part to avoid judicial interference with "the constitutionally protected independence of counsel," lest we "restrict the wide latitude counsel must have in making tactical decisions." *Id.* at 689, 104 S. Ct. at 2065. We instead "reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Id.*
>
> Underpinning *Strickland*, then, is the assumption that "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689-90, 104 S. Ct. at 2065-66. Crucially, *Strickland* permits attorneys to choose between viable avenues of defense, and attorneys are not ineffective for making a reasonable choice to take one avenue to the exclusion of another, or for selecting a reasonable course without considering some other, equally reasonable course. "If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And, our inquiry is limited to whether that strategy, that is, course A, might have been a reasonable one." *Chandler v. United States,* 218 F.3d 1305, 1315 at n. 16 (11th Cir. 2000).

*LeCroy v. United States*, 739 F.3d 1297, 1313 (11th Cir. 2014).

Here, Ms. Stacy Loggins, a senior fingerprint analyst with the DEA, testified on behalf of the United States at trial that three latent prints were found on the plastic bag found in the vehicle Asghedom was driving when he was arrested and that only two of those prints were suitable for comparison, both of which matched Asghedom. (Trial transcript, criminal doc. 75 at 126-27.) On cross-examination, Asghedom's other counsel, Mr. Bollaert, asked Ms. Loggins if there were other latent prints and or partial prints that were not suitable for identification, and she admitted that there were. (*Id.* at 137.) Mr. Bollaert also established that because they were not suitable for comparison, Ms. Loggins could not testify who they belonged to. (*Id.*) Thus, through cross-examination, Mr. Bollaert elicited evidence that prints belonging to another person could have been on the exhibit. It very well may have been defense counsel's strategy to poke holes in the United States's fingerprint expert's testimony through cross-examination rather than to engage in a "battle of the experts," leaving the jury with conflicting opinions. *See LeCroy*, 739 F.3d at 1308. This Court's only task is to determine if that strategy was reasonable, *see id.* at 1313, and here, there is no doubt that it was.

For the foregoing reasons, Asghedom is not due to relief on his first claim of ineffective assistance of counsel.

**B.      Alleged failure to allow Asghedom to testify in his own defense**

Asghedom's second claim, which is that his trial counsel was ineffective because she did not permit him to testify on his own behalf or inform him of his right to testify, fails because it is contradicted by this Court's questioning of him. Indeed, this Court engaged in the following colloquy directly with Asghedom during trial:

THE COURT: ALL RIGHT. MR. ASGHEDOM, I WANT TO DISCUSS AN ISSUE WITH YOU THIS MORNING, AND, THAT IS, YOUR RIGHT TO TESTIFY. WHAT COUNTRY ARE YOU FROM?

THE DEFENDANT: I WAS BORN IN ERITREA.

THE COURT: ERITREA?

THE DEFENDANT: YES, SIR.

THE COURT: BUT YOU SPEAK PERFECT ENGLISH?

THE DEFENDANT: YES.

THE COURT: I WANT TO MAKE SURE I HAVEN'T - - BECAUSE I HAVEN'T TALKED DIRECTLY TO YOU, AND I WANT TO MAKE SURE THAT YOU UNDERSTAND EVERYTHING.

THE DEFENDANT: YES, SIR.

THE COURT: EVERYONE HAS A RIGHT TO TESTIFY IN THEIR OWN CASE. AND

THAT RIGHT, WHILE YOU CAN GET ADVICE FROM YOUR LAWYER OR FROM FRIENDS OR FAMILY MEMBERS OR WHOEVER YOU WANT TO ABOUT THAT, IN THE END, THE PERSON WHO MAKES THAT DECISION IS YOU. DO YOU UNDERSTAND WHAT I MEAN?

THE DEFENDANT: YES, SIR.

THE COURT: IF YOU TAKE THE WITNESS STAND AND TESTIFY, THEN THE GOVERNMENT HAS A RIGHT TO CROSS EXAMINE YOU AND USE, SOMETIMES DIFFERENT EVIDENCE. AND I THINK THAT'S WHAT YOU ALL WERE LOOKING AT YESTERDAY WAS WHAT POTENTIALLY THE GOVERNMENT COULD USE TO IMPEACH YOU WITH IF YOU DO TESTIFY. I DON'T CARE WHETHER YOU TESTIFY. I AM HAPPY FOR YOU TO TESTIFY. MY JOB IS TO PROTECT YOUR RIGHTS, TO MAKE SURE YOU GET A FAIR TRIAL, AND ALSO TO MAKE SURE THE GOVERNMENT GETS A FAIR TRIAL. MY JOB IS TO STAND IN THE MIDDLE. I DON'T LEAN EITHER WAY. AND, SO, I HAVE HEARD IT, I HAVE HEARD DEFENDANTS BEFORE COMPLAIN, "IF I HAD JUST KNOWN I COULD TESTIFY, I WOULD HAVE DONE IT, AND I WOULD HAVE SAVED MY CASE AND I WOULD HAVE BEEN FOUND NOT GUILTY." USUALLY THOSE ARE PREMISED ON AN ALLEGATION

THE COURT: THAT THE LAWYER HAS PUT PRESSURE ON THEM NOT TO TESTIFY. AND I JUST WANT TO MAKE SURE YOU UNDERSTAND THAT IT'S UP TO YOU. DO YOU HEAR ME?

THE DEFENDANT: YES, SIR.

THE COURT: AND SOME PEOPLE, SOME DEFENDANTS THINK IT'S A LOT BETTER TO TESTIFY, IT HELPS THEM. SOME PEOPLE THINK THAT IT REALLY HURTS THEM. I DON'T HAVE ANY OPINION ONE WAY OR THE OTHER. DO YOU HAVE ANY QUESTIONS YOU WANT TO ASK ME ABOUT ANYTHING BEFORE YOU DECIDE WHETHER OR NOT YOU ARE GOING TO TESTIFY?

THE DEFENDANT: NO, SIR.

THE COURT: HAVE YOU MADE A DECISION AS TO WHETHER OR NOT YOU WANT TO TESTIFY IN YOUR OWN CASE?

THE DEFENDANT: YES, SIR.

THE COURT: DO YOU WISH TO TESTIFY IN YOUR OWN CASE?

THE DEFENDANT: NO, I DON'T.

THE COURT: OKAY. WELL, I AM GOING TO HONOR THAT REQUEST JUST LIKE I WOULD HONOR YOU TESTIFYING IF THAT'S WHAT YOU WANTED TO DO.

(Trial transcript, criminal doc. 76 at 6-9.)

In light of this extensive explanation, there is no doubt that Asghedom understood his right to testify regardless of anything he now alleges his trial counsel did or didn't tell him.[3] The record is abundantly clear that Asghedom understood his personal right to decide whether or not to take the stand in his own defense, and he freely elected not to do so. Because Asghedom's second claim is contradicted by the record, it fails.

### C. Asking questions on cross-examination that opened the door to a larger investigation

Asghedom's third claim is that his trial counsel rendered ineffective assistance in asking questions on cross-examination of DEA Special Agent Ryan Knerr that opened the door to evidence that Asghedom was already under investigation by the DEA at the time of the traffic stop that led to his arrest.

The background on this claim is as follows. Prior to trial, Ms. Briles filed a motion *in limine* seeking to prohibit the United States from introducing evidence of a GPS vehicle tracker that had been placed on the car Asghedom was driving when he was arrested. (Criminal doc. 52.) In response, the United States stated that the

---

[3] In her sworn affidavit on the subject, Ms. Briles confirmed that on two separate occasions during trial she explained, in detail, his right to testify and that he elected not to do so on his own accord. (Doc. 8-1 at 3-4.)

issue was moot because it did not intend to offer evidence regarding the tracking device at trial. (Criminal doc. 55.) At the beginning of trial, the Court directed the United States to ensure that no evidence of the vehicle tracker be introduced. (Trial transcript, criminal doc. 75 at 3-4.) Seeking clarification, the United States inquired as to whether the Court would permit it to introduce evidence generally of the larger investigation in which Asghedom was a target since it was that investigation which led to the traffic stop that day. (*Id.* at 4-5.) The Court denied the United States's request, stating, "I have no problem with you saying that he [a DEA agent] directed somebody, he directed somebody [to stop the vehicle Asghedom was driving], but there won't be any discussions to why, period." (*Id.* at 8.)

In cross-examining Agent Knerr, Ms. Briles engaged in the following dialogue:

MS. BRILES:     AT SOME POINT, ISN'T IT FAIR TO SAY YOU MADE A DETERMINATION THAT THE VEHICLE WAS NOT REGISTERED TO MR. ASGHEDOM. HE WAS NOT THE OWNER OF THAT CAR; ISN'T THAT CORRECT?

WITNESS:        YES. IT WAS NOT REGISTERED IN HIS NAME, CORRECT.

| MS. BRILES: | THAT'S CORRECT, RIGHT? AND YOU FOUND THAT OUT EITHER THEN OR AT SOME POINT, CORRECT? |
|---|---|
| WITNESS: | IT WAS LATER ON. |
| MS. BRILES: | DID YOU, AS PART OF YOUR INVESTIGATION, MAKE ANY INQUIRIES AS TO WHO WAS THE OWNER AND DID YOU SPEAK TO THE OWNER? |
| WITNESS: | I DID NOT. |
| MS. BRILES: | YOU DIDN'T THINK THAT WOULD BE IMPORTANT? |
| WITNESS: | I KNEW WHO THE OWNER WAS. I KNEW OF HIM. |
| MS. BRILES: | I AM NOT ASKING YOU KNEW WHO THE OWNER WAS, I'M ASKING IF YOU THOUGHT IT WAS IMPORTANT AS PART OF YOUR INVESTIGATION. |
| WITNESS: | NO. |

(Trial transcript, doc. 75 at 91-92.)

In light of this questioning, the United States then asked the Court to reconsider its ruling prohibiting inquiry into any evidence of the larger DEA investigation into Asghedom, arguing that the defense had opened the door by cross-examining Agent Knerr about why he had not followed up with the registered owner of the vehicle. The following exchange occurred:

| | |
|---|---|
| UNITED STATES: | JUDGE, MY CONCERN, JUDGE, IS WHAT HAPPENED -- MY CONCERN IS THAT THE CAR NOT BEING REGISTERED TO HIM HAS OPENED THE DOOR TO THE FACT THEY CAN LOOK AT SURVEILLANCE OF THIS VEHICLE, AT LEAST, AND HE WAS IN THEIR CAR. |
| COURT: | IT'S OPENED THE DOOR FOR THAT. TO ANSWER YOUR QUESTION, IT HAS OPENED THE DOOR SO YOU CAN GET INTO THAT. |

(Trial transcript, doc. 75 at 94.)

On redirect of Agent Knerr, then, the United States introduced evidence about the investigation leading up to the traffic stop as follows:

| | |
|---|---|
| UNITED STATES: | THIS CASE INVOLVING MR. ASGHEDOM, THIS WAS PART OF A LARGER INVESTIGATION, CORRECT? |
| WITNESS: | IT WAS. |
| UNITED STATES: | DID YOU CONDUCT SURVEILLANCE OF MR. ASGHEDOM DURING THE LARGER INVESTIGATION? |
| WITNESS: | I DID. |
| UNITED STATES: | ABOUT HOW MANY TIMES -- WELL, ABOUT LONG A PERIOD OF TIME DID YOU CONDUCT SURVEILLANCE OF MR. ASGHEDOM? |

WITNESS: PROBABLY JUNE OR JULY OF 2010 UP TO THE TRAFFIC STOP.

UNITED STATES: HOW MANY TIMES DID YOU PERSONALLY SEE MR. ASGHEDOM IN THAT SAME VEHICLE, THAT BLACK GMC SIERRA?

WITNESS: FIFTEEN, TWENTY TIMES.

UNITED STATES: HAD YOU EVER SEEN ANYONE ELSE IN THAT CAR?

WITNESS: NO.

UNITED STATES: AND YOU SAID YOU WERE WATCHING IT FOR ABOUT THREE MONTHS?

WITNESS: YES.

UNITED STATES: WHO WAS THE VEHICLE REGISTERED TO?

WITNESS: AN ALECIA HARRIS.

UNITED STATES: AT WHAT ADDRESS?

WITNESS: 108 PAGE.

UNITED STATES: AND MS. BRILES ASKED YOU, YOU NEVER WENT TO INTERVIEW ALECIA HARRIS; IS THAT RIGHT?

WITNESS: I DID NOT.

UNITED STATES: WHY NOT?

| | |
|---|---|
| WITNESS: | BECAUSE SHE IS A RELATIVE OF A SUBJECT IN ONE OF MY INVESTIGATIONS. |
| UNITED STATES: | NOW, YOU HAVE INVESTIGATED A LOT OF DRUG CASES, CORRECT? |
| WITNESS: | YES. |
| UNITED STATES: | HAVE YOU EVER SEEN A DRUG TRAFFICKER DRIVING A VEHICLE THAT WAS REGISTERED TO SOMEONE ELSE? |
| WITNESS: | ALL THE TIME. |
| UNITED STATES: | WHY WOULD THEY DO THAT? |
| WITNESS: | PROTECTS THEIR IDENTITY A BIT. THEY DON'T WANT ANYBODY TO KNOW WHAT THEY ARE DOING. |
| UNITED STATES: | WHAT ABOUT ASSET FORFEITURE, HOW DOES THAT FACTOR IN? |
| WITNESS: | IT MAKES IT MORE DIFFICULT FOR US TO SEIZE A VEHICLE. |
| UNITED STATES: | AND WHY IS THAT? |
| WITNESS: | BECAUSE IT'S NOT HIS VEHICLE. IT'S NOT IN HIS NAME SO WE HAVE TO CONTACT WHOEVER THE OWNER WAS, WHO IT WAS REGISTERED TO, AND THEY, THEY JUST – IT'S HARDER FOR US TO SEIZE IT. |

(Trial transcript, doc. 75 at 99-101.)

Asghedom's claim that Ms. Briles rendered constitutionally ineffective assistance fails because he cannot overcome the strong presumption that her decision to cross-examine Agent Knerr in the way she did was sound trial strategy. *See Chateloin v. Singletary*, 89 F.3d 749, 752 (11th Cir. 1996) (there is a strong presumption that counsel's actions constitute sound trial strategy). Indeed, by planting some doubt in the minds of the jurors as to her client's connection to the car, Ms. Briles might well have created a reasonable doubt as to whether Asghedom knew that the drugs found in the console were there. She was also presumably attempting to show the jurors that the arresting officer was not doing his job properly in not attempting to find the rightful owner of the vehicle that Asghedom was driving that day. *See Gordon v. United States*, 518 F.3d 1291, 1302 (11th Cir. 2008) ("When we can conceive of a reasonable motivation for counsel's actions, we will deny a claim of ineffective assistance without an evidentiary hearing."). In light of the Court's emphatic directive that the United States's witnesses not comment in any way on why they encountered Asghedom that day, and in an effort to insert reasonable doubt, it was reasonable for Ms. Briles to have believed that this line of questioning was worth the risk of the United States pointing out that she had opened the door to evidence of the larger investigation. Keeping in mind the following admonition from the Eleventh Circuit,

> [t]he test [for establishing constitutionally deficient performance] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . [The Court is] not interested in grading lawyers' performances; [it is] interested in whether the adversarial process at trial, in fact, worked adequately[,]

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 2012), the Court finds that Asghedom's fourth ineffective assistance of counsel claim fails.

### D. Failure to object to Court's refusal to answer juror question after close of evidence

Asghedom next argues that his trial counsel was ineffective for failing to object to the Court's decision not to reopen the evidentiary phase of the trial based upon questions asked by the jury during deliberations. By way of background, the trial transcript reveals the following exchange between the Court and the parties:

THE COURT: ALL RIGHT. I HAVE WHAT I HAVE HAD MARKED AS COURT'S EXHIBIT ONE WHICH IS A NOTE FROM THE JURY. THE QUESTIONS ON THE NOTE SAY THIS: "WHAT IS THE DEFENDANT'S OCCUPATION?" AND, SECOND, "IS THERE ANY RELATIONSHIP WITH THE DEFENDANT AND THE OWNER OF THE TRUCK?" SIGNED BY [REDACTED], FOREPERSON. I INTEND TO TELL THEM THAT THEY HAVE ALL THE EVIDENCE THAT THEY ARE GOING TO GET. THAT THERE IS, WE DON'T SUPPLEMENT THE RECORD AFTER IT GOES TO THE JURY. DOES ANYBODY HAVE ANY BETTER IDEA

OR WISH FOR ME TO SAY SOMETHING DIFFERENT?

MR. DIMLER:     NO, YOUR HONOR.

MS. BRILES:     NO, SIR.

(Trial transcript, criminal doc. 76 at 66.)

Asghedom's claim that defense counsel should have requested that the Court reopen the evidence phase of the trial in order to answer the jury's question fails because such a request would not have been granted. Indeed, the only manner in which this Court could have lawfully answered the jury's questions was to have reopened the evidentiary phase of the case. While a district court's decision whether to reopen a case to introduce evidence after the parties have rested is discretionary, several factors inform the exercise of that discretion: (1) the timeliness of the motion to reopen; (2) the character of the testimony to be offered; (3) the effect of granting the motion to reopen; and (4) the reasonableness of the excuse for the request to reopen. *United States v. Byrd*, 403 F.3d 1278, 1283-84 (11th Cir. 2005). Here, the factors weigh strongly against reopening the case. With regard to timeliness, the question was asked after the jury was instructed and had already begun deliberations, which would have had to begin anew if additional evidence was introduced. With regard to the character of the evidence, it was of marginal relevance, if any, and would very likely have hurt Asghedom more than

helped him. Indeed, Asghedom's argument that evidence of his relationship with the owner of the vehicle would have assisted his defense is purely speculative because, once the door was opened to that line of questioning, the United States could have delved into the evidence that had been presented to the Court in various pre-trial motions regarding the larger overall investigation into Asghedom's and others' drug trafficking activities. Further, the effect of reopening the evidentiary phase of the trial would have required halting the jury's deliberations and instructing them to deliberate as though the first deliberations had not occurred.

In sum, even if Asghedom's trial counsel had objected to the Court's instruction and moved the Court to reopen the case, such a motion would have been denied for the reasons set forth above. Thus, Asghedom's trial counsel was not ineffective for failing to raise an objection that would have been overruled by this Court.

### E. Failure to examine latent fingerprint evidence before trial

Asghedom's last claim is that his trial counsel was ineffective for failing to examine latent fingerprint evidence discovered on the plastic bag containing the half-kilogram of cocaine that he was convicted of having possessed with the intent to distribute. Asghedom advances his argument by claiming that he was "certain

that there were numerous other prints on the outer bag because it was a sandwich bag—and it was likely to have been touched by many others."

In making his claim, Asghedom offers no evidence in support of his assertion that there would have been identifiable latent fingerprints on the evidence other than his own. Moreover, he ignores evidence at trial that the only latent prints on the bag were his. As previously noted, Ms. Stacy Loggins, a senior fingerprint analyst with the DEA, testified that three latent prints were found on the plastic bag and only two of those prints were suitable for comparison, both of which matched Asghedom. (Trial transcript, criminal doc. 75 at 126-27.) On cross-examination, Asghedom's other counsel, Mr. Bollaert, asked Ms. Loggins if there were other latent prints and or partial prints that were not suitable for identification, and she admitted that there were. (*Id.* at 137.) Mr. Bollaert also established that because they were not suitable for comparison, Ms. Loggins could not testify who they belonged to. (*Id.*) Thus, through cross-examination, Mr. Bollaert[4] elicited evidence that prints belonging to another person could have been on the exhibit. There is little more Asghedom could have hoped to show with a

---

[4]     As previously noted, Ms. Briles explained that Mr. Bollaert handled all of the fingerprint evidence. (Doc. 8-1 at 4). Her assertion is evidenced by Mr. Bollaert's handling of the cross-examination of the United States's fingerprint expert. As set forth above, Asghedom explicitly stated that his ineffective assistance of counsel claims are made in reference to Ms. Briles exclusively.

third-party examination of the exhibit, much less that a third-party examination would have yielded a different outcome of the trial.

## III.    Conclusion

For the aforementioned reasons, Asghedom's § 2255 motion is due to be denied and this action dismissed with prejudice. Additionally, the Court declines to issue a certificate of appealability. This Court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable and wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted). Asghedom's claims do not satisfy either standard. Accordingly, insofar as an application for a certificate of appealability is implicit in Asghedom's motion, it is due to be denied.

A separate closing order will be entered.

**DONE** AND **ORDERED** ON October 24, 2018.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704